IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MAITONY YOHANDRY CARDENAS BARRERA,

    Petitioner,

v.                                        Case No. 2:25-cv-00266-MLG-KRS

DORA CASTRO, Warden, Otero County Processing
Center, MARY DE ANDA-YBARRA, Field Office
Director, El Paso Field Office, United States Immigration
and Customs Enforcement, PATRICK J. LECHLEITNER,
Senior Official Performing the Duties of the Director,
United States Immigration and Customs Enforcement,
KRISTI NOEM, Secretary of Homeland Security,
PAMELA JO BONDI, United States Attorney General,
in their official capacities,

    Respondents.

## ORDER GRANTING PETITONER'S TEMPORARY RESTRAINING ORDER

Petitioner filed a Motion for Temporary Restraining Order and Preliminary Injunction ("the Application") seeking a restraining order or, in the alternative, an injunction against Respondents. Doc. 2. That request was lodged late afternoon (7:30 P.M. M.D.T.) on Friday, March 14, 2025. After addressing procedural challenges, the Court held a hearing on March 25, 2025, to discuss a temporary restraining order ("TRO").

As explained below, the Court finds that Petitioner has clearly and unequivocally established his right to a temporary restraining order by showing that he is substantially likely to prevail on the merits, will suffer irreparable injury without the TRO, that his injury without the Order will be significantly greater than Respondents' with it, and that the TRO will serve the public interest. Consequently, the Court grants Petitioner a TRO barring Respondents and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise

from transferring or removing Petitioner from Otero County Detention Facility in Otero, New Mexico, unless to release him or to follow the orders of a final decision regarding Plaintiff's writ of habeas corpus, Doc. 1.

## DISCUSSION

"The decision to grant a temporary restraining order or a preliminary injunction is within the Court's discretion." *Todd v. RWI Acquisition LLC*, No. 2:12-cv-00114, 2012 U.S. Dist. LEXIS 200722, at *14 (D.N.M. June 1, 2012) (citing *Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1250, 1256 (10th Cir. 2003)). A TRO serves the purpose of "preserv[ing] the status quo." *Alexander v. Exec. Dir. Of Colo. Dep't of Corr.*, No. 12-cv-00626, 2012 U.S. Dist. LEXIS 34867, at *3 (D. Utah, Mar. 15, 2012). Given that a TRO is an extraordinary remedy, Petitioner "must make a 'clear and unequivocal' showing [he] is entitled to such relief." *State v. U.S. Environmental Protection Agency*, 989 F.3d 874, 883 (10th Cir. 2021) (quoting *Port City Props. V. Union Pac. R.R. Co.*, 518 F.3d 1186, 1190 (10th Cir. 2004). To obtain a TRO, Petitioner must show "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016).

### A. Prong One: The Merits

Because Petitioner possesses Temporary Protected Status ("TPS"), and given the information currently before the Court, it appears that he should not be detained. Doc. 1; *See* 8 USCS § 1254a(a)(1)(A) (noting that the Attorney General may, in certain situations, "grant an alien temporary protected status in the United States and shall not remove the alien from the United

States during the period in which such status is in effect"); *Id.* at § 1254a(d)(4) ("An alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States."); Doc. 2 at 1 ("[Respondent] U.S. Citizenship and Immigration Services (USCIS) approved [Petitioner's] application for [TPS]."). When questioned regarding the bases for Petitioner's detention and potential removal, the Government referenced 8 USCS § 1231(a)(6). But, so far, the Government has not put forward any evidence to suggest this provision is applicable to Petitioner. Accordingly, with the evidence before the Court, I find that Petitioner's writ is likely to succeed on the merits.

### B. Prong Two: Irreparable Harm Without the TRO

Without the TRO, the Petitioner is likely to be unlawfully removed from the United States ("U.S.") prior to the expiration of his TPS, satisfying the second prong of TRO. Doc. 2 at 1; *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.")). The Court notes that the Government is already likely violating Petitioner's constitutional and statutory rights by unlawfully detaining him while he has TPS status and given that he has largely cooperated with the Government since his removal order was first issued in November 2023. *See* 8 USCS § 1254a(d)(4) (stating that an alien with TPS should not be detained by the Attorney General); *See* Doc. 2 at 2 (noting that petitioner received an in absentia removal order in November 2023 when he missed his immigration court hearing, received TPS in June 2024, but was not detained until February 18, 2025 at a regularly scheduled check-in at the Immigration and Customs Enforcement ("ICE") office, which shows that Petitioner went through proper immigration channels to receive TPS and seemingly attended regular check-ins prior to being detained, both actions showing cooperation). As explained previously, the Government's

suggestion that it is holding Petitioner on the basis of 8 USCS § 1231(a)(6) lacks factual support *See* Doc. 1-3 at 20-21 (showing email from ICE Supervisory Detention and Deportation Office Ovni Corona stating that their office had "reached out to USCIS to ensure the TPS is still valid"); *supra* Part A (disproving arguments provided by the Government asserting that Petitioner could lawfully be held under 8 USCS § 1231(a)(6)). All told, if the Government is willing to ongoingly violate Petitioner's legal rights and unlawfully hold Petitioner under 8 USCS § 1231(a)(6), the Court can fairly infer that the same Government will likely unlawfully remove or transfer Petitioner absent an order from this Court.

Based on the foregoing, the Court finds Petitioner has identified an injury that cannot be remedied at law, such as by monetary damages, which is irreparable harm. *Sheldon v. Univ of N.M.*, 2023 U.S. Dist. LEXIS 211764, (D.N.M. Nov. 28, 2023) ("[P]laintiff satisfies the irreparable harm requirement by demonstrating a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.'") (citing *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)).

**C. Prongs Three and Four: Balance of Equities and the Public Interest**

Unlawfully removing or transferring Petitioner—indefinitely separating him from his work and family—will cause him serious harm, Doc. 2 at 4, while requiring Respondents to abstain from transferring or removing Petitioner while his writ of habeas corpus is pending presents no serious risk of injury. And to demand that the status quo be preserved to ensure that Respondents do not further violate Petitioner's constitutional or statutory rights does not harm the public interest but instead serves it.

## CONCLUSION

The Court grants Petitioner a TRO barring Respondents and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise from transferring or removing Petitioner from Otero County Detention Facility in Otero, New Mexico, unless to release him or to follow the orders of a final decision regarding Plaintiff's writ of habeas corpus, Doc. 1.

This TRO takes effect immediately and loses effect on Wednesday, April 2, 2025 at 12 P.M. M.D.T., which is when Petitioner's TPS status expires. Doc. 1-2 at 2 (approving Petitioner's TPS until April, 2, 2025). It is meant to preserve the status quo until the Court has a merits hearing regarding Petitioner's writ. Doc. 1.

Exercising its discretion, the Court determines that bond pursuant to Fed. R. Civ. P. 65(c) is unnecessary because "there is an absence of proof showing a likelihood of harm" to Respondents. *Coquina Oil. Corp. v. Transwestern Pipeline Co.,* 825 F.2d 1461, 1462 (10th Cir. 1987).

It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA